JAMES W. PANCHINSIN *et al.*, Plaintiffs-Appellees, *v.* THE ENTER-PRISE COMPANIES *et al.*, Defendants-Appellants.

First District (5th Division)   No. 82—2134

Opinion filed August 19, 1983.

McKenna, Storer, Rowe, White & Farrug, of Chicago (Robert S. Soderstrom and Shaun McPartland, of counsel), for appellants Metalglas Industries, Inc., Endura Coatings, and Bhaskar Urs.

Sidley & Austin, of Chicago, for appellant Union Carbide Company.

Rivkin, Leff, Sherman & Radler, of Chicago, for appellant The Dow Chemical Company.

Pope, Ballard, Shepard & Fowle, of Chicago, for appellant E.I. DuPont-DeNemours Company.

Baker & McKenzie, of Chicago, for appellants Ashland Oil, Inc., and Ashland Chemical, Inc.

Law Offices of Thomas J. Keevers, of Chicago, for appellant Insilco Home Products Corporation d/b/a The Enterprise Companies, *et al.*

Burgeson, Laughlin, Cunningham & Hare, of Chicago, for appellants Ashland Oil, Inc., Ashland Chemical, Inc., and M & T Chemicals, Inc.

Chadwell, Kayser, Ruggles, McGee & Hastings, Ltd., of Chicago, for appellants Hercules, Inc., and Hercules Chemical Corporation.

Lord, Bissell & Brook, of Chicago, for appellant Mobay Chemical and Baychem Corporation.

Robert A. Holstein, Ltd., of Chicago, for appellant DeGussa, Inc.

Susan E. Loggans & Associates, of Chicago, for appellees.

JUSTICE LORENZ delivered the opinion of the court:

James and Linda Panchinsin, California residents, filed a tort action in Illinois on June 15, 1981, based on injuries allegedly suffered by James in California on June 17, 1979. Their lawsuit would have been barred in California by a one-year statute of limitations (compare Cal. Civ. Proc. Code secs. 312 and 340 (West 1982), with Ill. Rev. Stat. 1981, ch. 110, pars. 13—202, 13—203), and the defendants[1] moved to dismiss on the grounds that the plaintiffs were precluded from bringing an action in Illinois by operation of the so-called borrowing statute (Ill. Rev. Stat. 1981, ch. 110, par. 13—210). In response the plaintiffs argued that the borrowing statute is not applicable because the defendants allegedly are residents of Illinois. See *Coan v. Cessna Aircraft* (1973), 53 Ill. 2d 526.

The trial court denied the motions to dismiss, but certified that ultimate termination of the case would be materially advanced by interlocutory appeal of its order and the following questions of law:

---

[1]Metalglas Industries, Inc., Insilco Home Products Corporation d/b/a The Enterprise Companies, Hercules Incorporated, Hercules Chemical Corporation, M & T Chemicals, Inc., Union Carbide Company, The Dow Chemical Company, Ashland Oil, Inc., Ashland Chemical, Inc., E. I. DuPont-DeNemours Company, DeGussa, Inc., Mobay Chemical and Baychem Corporation, and Bashkar Urs.

(1) Whether the borrowing statute applies to actions brought against Illinois residents; and

(2) Whether it violates the equal protection clauses of the United States and Illinois constitutions (U.S. Const., amend. 14, sec. 1; Ill. Const. 1970, art. I, sec. 2) to provide that the borrowing statute is not applicable to defendants who are Illinois residents.

We granted leave to appeal from the trial court's interlocutory order (see 87 Ill. 2d R. 308), and we affirm.

The key issue in resolution of the first question is whether this case is controlled by the holding of *Coan v. Cessna Aircraft* (1973), 53 Ill. 2d 526. In *Coan*, an Illinois resident was injured in Kentucky on September 17, 1968, and filed an action in Illinois against several defendants, including another Illinois resident, on September 15, 1970. On the date the action was filed in Illinois, however, it would have been barred by Kentucky's one-year statute of limitations, and the defendants argued that the Illinois action was thereby precluded by operation of the borrowing statute. (53 Ill. 2d 526, 527.) This statute provides that:

> "When a cause of action has arisen in a state or territory out of this State, or in a foreign country, and, by the laws thereof, an action thereon cannot be maintained by reason of the lapse of time, an action thereon shall not be maintained in this state." Ill. Rev. Stat. 1969, ch. 83, par. 21, now recodified at Ill. Rev. Stat. 1981, ch. 110, par. 13—210.

In deciding *Coan* the supreme court sought to determine the intent of the General Assembly which enacted this law, and after stating that "[i]t is reasonable to conclude that [the borrowing statute] was intended to apply only to cases involving nonresident parties" (53 Ill. 2d 526, 529), the court reversed a judgment which dismissed Coan's action as barred by the borrowing statute (53 Ill. 2d 526, 527, 530).

The defendants in the present case argue that *Coan* is not binding precedent because it concerned a plaintiff who was an Illinois resident, whereas the Panchinsins were and are California residents. They also contend the court merely provided a nonbinding *obiter dictum* when it stated that "[i]t is reasonable to conclude that [the borrowing statute] was intended to apply only to cases involving nonresident parties." (53 Ill. 2d 526, 529.) We must therefore determine whether this statement is merely a nonprecedential passing comment or whether, under the doctrine of *stare decisis*, it is the *ratio decidendi* of the case.

The doctrine of *stare decisis*—a basic tenet of our legal system

(*Hoffman v. Lehnhausen* (1971), 48 Ill. 2d 323, 329)—provides that "[w]here the Supreme Court has declared the law on any point, it alone can overrule and modify its previous action, and the lower judicial tribunals are bound by such decision and it is the duty of such lower tribunals to follow such decision in similar cases." *Agricultural Transportation Association v. Carpentier* (1953), 2 Ill. 2d 19, 27.

The *ratio decidendi* of a case is "the principle of law which is the basis of the actual decision and therefore, by virtue of the doctrine of *stare decisis*, the principle which subsequent courts, faced with a set of facts indistinguishable in any material particular from those in the precedent case, must apply to the decision of the subsequent case also." (Walker, The Oxford Companion to Law 1033 (1980).) Conversely, "[a] court may not speak authoritatively upon questions not involved in the litigation" (*Boddiker v. McPartlin* (1942), 379 Ill. 567, 577), and "an expression or statement by the court on a matter not necessarily involved in the case nor necessary to a decision thereof" is *obiter dictum*—a mere passing comment which "is not binding as authority or precedent within the rule of *stare decisis*" (*Department of Public Works & Buildings v. Butler Co.* (1958), 13 Ill. 2d 537, 545.) Therefore, to determine the *ratio decidendi* of a case, a court must ascertain (1) what facts were considered material by the court in the prior case, and (2) "what proposition of law justified that decision on these materials facts." Walker, The Oxford Companion to Law 1033 (1980).

According to the defendants, the material fact which distinguishes *Coan* from the present case is that Coan was an Illinois resident who, by happenstance, was injured in another State. Focusing on this as the key fact in *Coan*, the defendants contend the *ratio decidendi* of that case is that Illinois has an overriding interest in permitting an injured Illinois plaintiff to maintain an action in Illinois even though the action would have been barred in the State where it arose, and that "equitable considerations may militate against a strict application of the Borrowing Statute, particularly in instances where an Illinois resident plaintiff fortuitously suffers injury out of state." See, e.g., *Templeman v. Baudhuin Yacht Harbor, Inc.* (1st Cir. 1979), 608 F.2d 916 (applying Illinois law).

However, examination of the *Coan* opinion shows that under the court's analysis it is immaterial whether the plaintiff or the defendant was an Illinois resident, and that the material fact was that the case did not involve a plaintiff and defendant who were both nonresidents. The court started by stating that both plaintiff and at least one defendant were Illinois residents (53 Ill. 2d 526, 527), and that one of

the issues presented was whether "our borrowing statute was applicable *only if the parties to a suit were nonresidents of Illinois.*" (Emphasis added.) (53 Ill. 2d 526, 527.) Moreover, when the court construed the borrowing statute by reading it in relation to the tolling statute (Ill. Rev. Stat. 1969, ch. 83, par. 19; recodified, as amended, at Ill. Rev. Stat. 1981, ch. 110, par. 13—208), it made references which further establish that the material fact was that one of the parties (whether plaintiff or defendant) was an Illinois resident. See 53 Ill. 2d 526, 528-29 ("If [the borrowing statute] is read to apply *when a resident of Illinois is a party,* as the court read it here, its operation and that of [the tolling statute] are in conflict" (emphasis added)), and 53 Ill. 2d 526, 529 ("[I]f [the borrowing statute] is considered as applying to an action *when a resident of Illinois is a party,* its operation, upon the running of the statute of limitations in the State where the cause of action arose, would conflict with the operation of [the tolling statute]" (emphasis added)).

We find that the material fact in *Coan v. Cessna Aircraft* was that the case did not involve nonresidents, and that the legal principle which justified the decision which the court reached based on this material fact (*i.e.,* the *ratio decidendi* of the case) is that the borrowing statute "was intended to apply only to cases involving nonresident parties." (53 Ill. 2d 526, 529.) We therefore hold that, under the binding precedent of *Coan v. Cessna Aircraft,* defendants who are Illinois residents cannot take advantage of the borrowing statute.

We acknowledge that the defendants forcefully argue *Coan* was wrongly decided, but we lack authority to modify or overrule the supreme court's decisions, and such arguments are unavailing in this tribunal.

We also note that a portion of the tolling statute was declared unconstitutional in *Haughton v. Haughton* (1979), 76 Ill. 2d 439. However, the decision in *Coan* was based on the supreme court's determination of what the General Assembly intended when it enacted the borrowing statute, and the fact that a portion of another statute was eventually held unconstitutional did not *nunc pro tunc* alter the legislature's intent.

■ The next question is whether the defendants have been deprived of equal protection of the laws. (See U.S. Const., amend. 14, sec. 1; Ill. Const. 1970, art. I, sec. 2.) According to the defendants, it is unconstitutional for Illinois to provide that defendants who are Illinois residents cannot take advantage of the Illinois borrowing statute.

"The Equal Protection Clause provides a basis for challenging legislative classifications that treat one group of persons as inferior or

superior to others, and for contending that general rules are being applied in an arbitrary or discriminatory way." (*Jones v. Helms* (1981), 452 U.S. 412, 423-24, 69 L. Ed. 2d 118, 128, 101 S. Ct. 2434, 2442-43.) However, the applicable standard of review in equal protection cases depends upon the nature of the classification or the interest affected (*Dunn v. Blumstein* (1972), 405 U.S. 330, 335, 31 L. Ed. 2d 274, 280, 92 S. Ct. 995, 999), and "[u]nless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classifications challenged be rationally related to a legitimate state interest." *New Orleans v. Dukes* (1976), 427 U.S. 297, 303, 49 L. Ed. 2d 511, 517, 96 S. Ct. 2513, 2516-17.

Illinois residency is not a historically suspect classification such as race, religion, or alienage, and the decision of the Illinois General Assembly to "discriminate" against all the residents of Illinois does not implicate the fundamental right to travel from State to State. Moreover, the "shelter [of statutes of limitation] has never been regarded as what now is called a 'fundamental' right or what used to be called a 'natural' right of the individual." (*Chase Securities Corp. v. Donaldson* (1945), 325 U.S. 304, 314, 89 L. Ed. 1628, 1635-36, 65 S. Ct. 1137, 1142.) We therefore find that the present case calls for application of the deferential "rationality" standard under which a classification is valid if it is rationally related to a legitimate governmental purpose.

"In determining whether a challenged classification is rationally related to achievement of a legitimate state purpose, we must answer two questions: (1) Does the challenged legislation have a legitimate purpose? and (2) Was it reasonable for the lawmakers to believe that the use of the challenged classification would promote that purpose?" (*Western & Southern Life Insurance Co. v. State Board of Equalization* (1981), 451 U.S. 648, 668, 68 L. Ed. 2d 514, 531, 101 S. Ct. 2070, 2083.) "This inquiry employs a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary." *Massachusetts Board of Retirement v. Murgia* (1976), 427 U.S. 307, 314, 49 L. Ed. 2d 520, 525, 96 S. Ct. 2562, 2567.

Under this deferential standard of review a statutory classification is valid if the court can reasonably conceive of any set of facts which would justify the law. (*McGowan v. Maryland* (1961), 366 U.S. 420, 426, 6 L. Ed. 2d 393, 399, 81 S. Ct. 1101, 1105.) Moreover, even

if the factual basis apparently underlying a statutory classification is incorrect, the law is valid if the factual predicate is "at least debatable" (*United States v. Carolene Products Co.* (1938), 304 U.S. 144, 154, 82 L. Ed. 1242, 1243, 58 S. Ct. 778, 784), and "those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." *Vance v. Bradley* (1979), 440 U.S. 93, 111, 59 L. Ed. 2d 171, 184, 99 S. Ct. 939, 949.

In the present case the defendants argue there is no rational reason for providing that Illinois residents cannot take advantage of the Illinois borrowing statute. As noted above, application of the borrowing statute to the present case would mean the defendants (who are allegedly Illinois residents) would be shielded from liability under the one-year California statute of limitations, rather than being exposed to potential liability through operation of the Illinois limitation period of two years. However, it is reasonably conceivable that the legislature could have concluded (1) Illinois residents who commit torts are likely to injure other Illinois residents, and (2) refusing to permit Illinois residents to take advantage of a shorter than generally available limitations period (through application of the borrowing statute) would promote the health, safety, and welfare of our citizens by encouraging Illinois residents to maintain high safety standards.

These factual assumptions may not stand up to rigorous scientific scrutiny, but the defendants have failed to meet their burden of showing that the issue was not "debatable" (*United States v. Carolene Products Co.* (1938), 304 U.S. 144, 154, 82 L. Ed. 1242, 1243, 58 S. Ct. 778, 784), or that these facts "could not reasonably be conceived to be true by the [legislature]" (*Vance v. Bradley* (1979), 440 U.S. 93, 111, 59 L. Ed. 2d 171, 184, 99 S. Ct. 939, 949). Protecting the public health, safety, and welfare is unquestionably a legitimate governmental purpose, and the defendants have failed to establish it was not within the range of reason for the legislature to conclude that the classification in question would promote this purpose. We therefore hold that the defendants have failed to establish they were deprived of equal protection of the laws.

Based on the reasons given above, the order of the circuit court is affirmed.

Affirmed.

SULLIVAN and MEJDA, JJ., concur.