LAKE COUNTY TRUST COMPANY, as Trustee, *et al.*, Plaintiffs-Appellees, v. TWO BAR B, INC., a/k/a Two-Bar-B Ranch, Inc., *et al.*, Defendants-Appellants (Jasper County Farm Bureau Co-op *et al.*, Defendants).

First District (3rd Division)   No. 1—87—2590

Opinion filed April 12, 1989.

Thomas E. McClure and Paul F. Michel, both of Bourbonnais, for appellants.

Howard E. Gilbert & Associates, of Chicago (Howard E. Gilbert and Michael D. Richman, of counsel), for appellees.

PRESIDING JUSTICE FREEMAN delivered the opinion of the court:

This is an appeal from an action in interpleader and for declaratory judgment seeking a declaration of the rights and liabilities of the parties regarding proceeds resulting from a crop share lease agreement. Defendants appeal from orders of the trial court which dismissed their amended counterclaim and granted plaintiffs' motion to strike defendants' motion for rehearing.

For the reasons stated below, we reverse the judgment of the circuit court and remand this matter for further proceedings.

On December 2, 1985, plaintiffs, Lake County Trust Company, as trustee under trust No. 3138 dated June 6, 1983 (Lake County Trust), and Holland Farms, Inc. (Holland Farms), filed a complaint in the nature of an interpleader and for declaratory judgment. The complaint alleges that Lake County Trust is a land trust organized and existing under the laws of the State of Indiana and that Holland Farms is the beneficiary of the trust. On June 13, 1983, Lake County Trust, as the buyer, executed a contract with defendants, Two Bar B, Inc. (Two Bar B), and Maurice L. Blanchette, as sellers, for the sale and purchase of certain farmland located in Jasper County, Indiana. On July 6, 1983, Lake County Trust executed an installment note payable to the order of Two Bar B for the purchase of the land, and the note was secured by a mortgage to defendant City National Bank of Kankakee (Bank). On the same date, Lake County Trust executed an assignment of rents, naming the Bank as payee. On September 28, 1983, Holland Farms and defendants, the Koebcke Brothers, executed a crop share lease agreement pursuant to which Holland Farms agreed to lease the farmland to the Koebcke Brothers on a 50/50 crop share basis.

On September 16, 1985, the Bank notified plaintiffs that the July 6, 1983, installment note, executed by Lake County Trust, was in default. The Bank also advised the recipients of the crop share funds to turn over to the Bank all of the crop share monies from the crop share lease agreement. The complaint alleges that thereafter, defendant Cargill, Inc. (Cargill), and/or defendant Jasper County Farm Bureau Co-op delivered to Holland Farms checks totalling an amount

which allegedly comprised the crop share amount due to Holland Farms under the crop share agreement with Koebcke Brothers. Each of the checks designated as payees "Jasper Farms, c/o Lake County Trust Co. & City National Bank of Kankakee."

On January 14, 1986, several of the named defendants in the instant suit filed a mortgage foreclosure action in the Jasper superior court in the State of Indiana, naming Lake County Trust and Holland Farms as defendants. The Indiana action was based on the same installment note, mortgage instrument, and assignment of rents document as are the subject of the instant suit.

On September 24, 1986, plaintiffs in the instant case presented a motion to compel defendant Cargill to deposit the crop share checks and proceeds with the Cook County registry, pending the adjudication of the interpleader action. Cargill objected, asserting that the same funds were the subject of the Indiana proceeding. The trial court entered an order on October 1, 1986, granting plaintiffs' motion and ordering Cargill to deposit all of the funds referred to in the complaint, totalling $47,120.45, with the clerk of the circuit court of Cook County. On December 8, 1986, the trial court granted plaintiffs' motion to deposit to the same account an additional check arising out of the crop share lease proceeds, in the amount of $20,112.17.

On October 17, 1986, defendants filed an answer to the complaint, denying that plaintiffs are entitled to the relief sought. Also on that date, defendants filed a counterclaim, asserting their entitlement to all of the funds deposited with the clerk of court. The counterclaim alleges, among other things, that the installment note and assignment of rents executed by Lake County Trust on July 6, 1983, each named Two Bar B as payee. Attached to the counterclaim is an agency agreement, purportedly indicating that Two Bar B had endorsed the note, payable to the order of the Bank of Kankakee, in consideration for which the Bank agreed to act as the agent of several of the individually named defendants in collecting and disbursing proceeds under the note. The counterclaim alleges that plaintiffs defaulted on the note on July 2, 1985. On September 16, 1985, Lake County Trust was notified of the default and of the exercise of rights under the assignment of rents.

On November 5, 1986, plaintiffs filed a motion to strike and dismiss the counterclaim, asserting that the Bank and its beneficiaries lacked standing to assert rights in and to the note and assignment of rents, since the note attached to the counterclaim was not endorsed by Two Bar B, or payable to the order of the Bank of Kankakee. Defendants then filed a motion to attach, as an additional exhibit, an

endorsement of the note by Two Bar B, payable to the order of the Bank as agent for certain individual defendants. Plaintiffs replied that the endorsement was not valid, as it was not made on the note itself or on a separate piece of paper firmly affixed to the note, if there was no longer any space for the endorsement on the back of the note itself. The trial court granted plaintiffs' motion to strike the counterclaim and allowed defendants 28 days in which to file an amended counterclaim.

On February 19, 1987, defendants filed an amended counterclaim. Attached to the amended counterclaim is a copy of the July 6, 1983, installment note, endorsed on the reverse side by Two Bar B payable to the order of the Bank of Kankakee as agent for the named individual defendants. Also attached is an affidavit of Robert Loitz, an agribusiness officer for the Bank, which states that the attachment to the counterclaim is a true and correct copy of the original note in the possession of the Bank, and that on the reverse side of the original document appears the endorsement language of Two Bar B, payable to the order of the Bank of Kankakee as agent for the named individual defendants.

On March 18, 1987, plaintiffs moved to strike and dismiss the amended counterclaim, asserting several grounds. First, defendants should have been barred under the judicial admissions doctrine from claiming that the installment note was properly endorsed by Two Bar B to the Bank of Kankakee, since defendants had introduced into evidence the same installment note, without the endorsement, in the action pending in Indiana. Second, only Two Bar B has standing to assert any rights under the assignment of rents, and Two Bar B has been disabled by its corporate dissolution from asserting any claims. Third, defendants are precluded from claiming any of the crop share monies, since the installment note and assignment of rents documents each provide for the "exclusive remedy" of foreclosure against the corpus of the land trust. Defendants were pursuing such a remedy in the Indiana proceeding.

On April 10, 1987, the trial court entered an order granting the motion of plaintiffs to dismiss the amended counterclaim with prejudice. The order includes a finding pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)) that there is no just reason to delay enforcement or appeal. On May 4, 1987, defendants filed a motion pursuant to section 2–1203 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2–1203) for rehearing or to vacate the order of dismissal. On July 23, 1987, the trial court entered an order striking the motion for lack of jurisdiction, citing defendants' failure to file a

notice of appeal within 30 days of the April 10, 1987, order. The trial court also included in the order a Rule 304(a) finding that there is no just reason to delay enforcement of or appeal from the order.

Defendants filed a notice of appeal on August 17, 1987. On December 9, 1987, the appellate court granted plaintiffs' motion to dismiss the appeal on the basis of the decision in *Elg v. Whittington* (1987), 119 Ill. 2d 344, 518 N.E.2d 1232. Defendants filed a petition for rehearing, which the court denied on April 25, 1988. However, on May 24, 1988, the appellate court reversed itself by an order which vacated its earlier orders of December 7, 1987, and April 25, 1988. Plaintiffs filed a second motion to dismiss the appeal, on grounds not previously asserted. Plaintiffs' second motion to dismiss was denied by the appellate court on August 3, 1988.

In the instant appeal, defendants initially assert that the trial court erred in granting plaintiffs' motion to strike defendants' motion for rehearing. Defendants contend that the filing of their motion for reconsideration on May 4, 1987, tolled the time for filing a notice of appeal.

■ Recently, the supreme court in *Elg v. Whittington* (1987), 119 Ill. 2d 344, 518 N.E.2d 1232, held that the filing of a timely post-trial motion will not toll the running of the 30-day period for filing a notice of appeal based upon a Rule 304(a) finding that there is no just reason to delay enforcement or appeal. That opinion was modified to make the decision prospective and applicable to cases in which the notice of appeal was filed or due to be filed on or after November 16, 1987. In the instant case, the amended counterclaim was dismissed with prejudice and a Rule 304(a) finding made by the trial court on April 10, 1987. Defendants' motion to vacate was filed on May 4, 1987, within 30 days of entry of the court's order granting the motion to dismiss. Thereafter, on July 23, 1987, the trial court granted plaintiff's motion to strike defendants' motion to vacate for lack of jurisdiction and included the Rule 304(a) language. Defendants' notice of appeal was filed on August 17, 1987, within 30 days of entry of the granting of the motion to strike. Since *Elg* cannot be applied to the instant case, we hold that defendants' notice of appeal was timely. (See *Marathon Finance Co. v. Pioneer Bank & Trust Co.* (1988), 168 Ill. App. 3d 148, 151, 522 N.E.2d 248; *Schmall v. Village of Addison* (1988), 171 Ill. App. 3d 344, 525 N.E.2d 258; *Lewis v. Royal Globe Insurance Co.* (1988), 170 Ill. App. 3d 516, 524 N.E.2d 1126; *Cain v. Sukkar* (1988), 167 Ill. App. 3d 941, 521 N.E.2d 1292.) We decline to follow the third district court's opinion in *Parrish v. Lee* (1988), 167 Ill. App. 3d 443, 521 N.E.2d 1188, cited by plaintiffs. Since we have found that the cir-

cuit court had jurisdiction regarding defendants' motion for reconsideration, we will address the remaining arguments raised on appeal.

Defendants also contend that the trial court erred in dismissing their amended counterclaim. First, the installment note and assignment of rents documents are ambiguous. The documents must be read together, defendants assert, since they were executed by the parties in the course of the same transaction. Further, both documents contain language which excludes personal liability by the trustee and also purports to limit the remedy of the holder of the note and assignment of rents to foreclosure. Defendants contend that the assignment of rents instrument, however, also contains language which states the intent of the parties that all rents derived from the premises be assigned to defendants. Further, the installment note contains language in a footnote that gives the holder of the note the right to the sum of $30,218.75 quarterly in addition to an assignment of rentals. Defendants contend that the language of each document allowing for an assignment of rents conflicts with the other language contained in each document creating an exclusive remedy in foreclosure.

■ Parties to a contract may limit their rights, duties, and obligations by express agreement. (*Jackson v. First National Bank* (1953), 415 Ill. 453, 114 N.E.2d 721; *Structural Sales, Inc. v. Vavrus* (1985), 132 Ill. App. 3d 718, 477 N.E.2d 745.) Parties may contract for an exclusive remedy which shall be binding upon them. (*United States ex rel. Armco Drainage & Metal Products, Inc. v. Vander Heyden* (S.D. Ill. 1958), 158 F. Supp. 930, 932.) However, the contract must clearly indicate that the parties intend that the stipulated remedy be the sole or exclusive remedy. *Structural Sales, Inc.*, 132 Ill. App. 3d at 720.

■ In construing a contract, it is presumed that all provisions were inserted for a purpose, and conflicting provisions will be reconciled if possible so as to give effect to all of the contract's provisions. (*Bruno Benedetti & Sons, Inc. v. O'Malley* (1984), 124 Ill. App. 3d 500, 464 N.E.2d 292.) Where, however, contractual language is ambiguous or obscure in its meaning so that the contractual intentions of the parties cannot be understood from a mere inspection of the instrument, extrinsic evidence may be introduced to explain the actual meaning of the language used. *Harlem-Irving Realty, Inc. v. Alesi* (1981), 99 Ill. App. 3d 932, 425 N.E.2d 1354.

■ In the instant case, we find an ambiguity in the language of the two documents which form the agreement between the parties that cannot be reconciled from a mere reading of the documents themselves. The trial court pointed out the apparent conflict between

the "exclusive remedy" language and the language allowing for a remedy under an assignment of rents. While noting the ambiguity, however, the court apparently failed to allow the parties to present extrinsic evidence regarding their intent as to the remedy provisions. The parties should have been allowed to present extrinsic evidence regarding this issue, and therefore, we find that the trial court improperly granted plaintiff's motion to dismiss defendants' amended counterclaim on the record before it.

■ Plaintiffs respond that even if the trial court is found to have erroneously construed the assignment of rents document as having an exclusive remedy clause, the amended counterclaim is barred by the rule that a mortgagor (here, Lake County Trust) is not required to account to the mortgagee (defendants here) for rents and profits while he remains in possession of the premises. Since plaintiffs failed to raise this argument in their motion to dismiss the counterclaim, however, they have waived it on appeal. Ill. Rev. Stat. 1987, ch. 110, par. 2–612(c)); *Fourfouris v. Standard Oil Realty Corp.* (1981), 100 Ill. App. 3d 162, 426 N.E.2d 915.

Defendants also contend that they have standing to assert rights under the installment note and assignment of rights. The right to an assignment of rents provided for in the installment note, defendants assert, became vested in the Bank of Kankakee as agent for certain individual defendants upon transfer of the note by Two Bar B. Defendants assert that the transfer by Two Bar B occurred prior to the time of the corporate dissolution of Two Bar B and therefore is valid.

Plaintiffs respond that only the installment note, and not the assignment of rents, was assigned to the Bank. Further, plaintiffs assert that defendants' counterclaim was not timely filed. Plaintiffs cite the Missouri corporate survival statute, which sets forth a two-year limitations period within which a dissolved Missouri corporation may bring an action from the date of dissolution. (Mo. Rev. Stat. §351.565.) Plaintiffs assert that Two Bar B filed a certificate of dissolution with the Missouri Secretary of State's office on November 17, 1983, and filed its original counterclaim on October 17, 1986, more than two years later.

Defendants reply that the five-year Illinois survival statute (Ill. Rev. Stat. 1987, ch. 32, par. 12.80) applies to the instant case. Even if the Illinois statute does not apply, defendants assert, their cause of action was properly brought since all rights and causes of action of a dissolved corporation pass to the shareholders. Defendants cite *Shute v. Chambers* (1986), 142 Ill. App. 3d 948, 492 N.E.2d 528, in which

the court held that the shareholders could maintain an action in their own capacities on a note naming the dissolved corporation as payee, even though suit was not initiated within the statutory survival period for actions by or against dissolved corporations. Defendants contend that their counterclaim named as counterplaintiffs not only Two Bar B but also former shareholders of the corporation (*e.g.*, defendants, the Blankenbergs and Blanchettes), and therefore, their claim survives at least regarding the shareholders.

We agree with defendants that *Shute* governs the instant case. The court in *Shute* found that the survival statute (Ill. Rev. Stat. 1983, ch. 32, par. 157.94 (subsequently amended and recodified as Ill. Rev. Stat. 1987, ch. 32, par. 12.80)) did not apply to the plaintiffs' action, which involved, not a suit against a dissolved corporation, but rather a debt incurred by the defendant pursuant to a purchase agreement and installment note. The court stated that as former shareholders, the plaintiffs were entitled to receive, by operation of law, assets resulting from the payment of debts of the dissolved corporation. The court stated that the plaintiffs' right to sue on the debt incurred by the defendant was "in no way derivative of an injury to the former corporation." (*Shute*, 142 Ill. App. 3d at 954.) The court distinguished cases involving actions by shareholders which were derivative in nature. In reaching its conclusion in *Shute*, the court reasoned that to allow the corporate survival statute to be applied to the type of claim presented by the plaintiffs "would result in barring former shareholders from enforcing rights to corporate assets at the same time they succeeded to ownership of the assets by operation of law." *Shute*, 142 Ill. App. 3d at 954.

Further, the court in *Shute* cited *Jenot v. White Mountain Acceptance Corp.* (1984), 124 N.H. 701, 474 A.2d 1382, in which a New Hampshire court declined to apply a corporate survival statute to an action by a former shareholder to foreclose a mortgage given to the corporation and enforce a promissory note secured by the mortgage. The court in *Jenot* noted that the plaintiff, in his individual capacity, sought recovery of an asset he acquired by operation of equity principles. Further, the court noted that an assignment was not necessary to transfer corporate assets to shareholders. *Jenot*, 474 A.2d 1382.

■ In the instant case, defendants' counterclaim seeks to enforce rights resulting from a note and assignment of rents which named Two Bar B as payee. The individual defendants, as shareholders of Two Bar B, may sue, by way of a counterclaim, for recovery on the default of the note and are not barred from so doing by the limitations periods set forth in the Illinois or Missouri corporate survival

statutes. See *Shute*, 142 Ill. App. 3d at 952-54.

■ In any event, we find plaintiffs' argument that the Missouri survival statute applies to the defendants' counterclaim unpersuasive because we hold that the Illinois "borrowing" statute (Ill. Rev. Stat. 1987, ch. 110, par. 13—210), which provides for the application of a statute of limitations of a foreign jurisdiction, does not apply to the instant case. The statute provides:

> "When a cause of action has arisen in a state or territory out of this State, or in a foreign country, and, by the laws thereof, an action thereon cannot be maintained by reason of the lapse of time, an action thereon shall not be maintained in this State." (Ill. Rev. Stat. 1987, ch. 110, par. 13—210.)

However, as stated in *Miller v. Lockett* (1983), 98 Ill. 2d 478, 457 N.E.2d 14, the borrowing statute was intended to be applied when the parties are nonresidents of Illinois. Where Illinois residents are parties to the action, the borrowing statute has been held not to apply. (*Coan v. Cessna Aircraft* (1973), 53 Ill. 2d 526, 293 N.E.2d 588; *Panchinsin v. Enterprise Cos.* (1983), 117 Ill. App. 3d 441, 453 N.E.2d 797.) In the instant case, since the individual defendants/counterplaintiffs are residents of Illinois, the borrowing statute does not apply to their action.

■ Further, we find that plaintiffs failed in their motion to dismiss to show that the assignment of rents was not assigned together with the note. Defendants responded that the note, which was assigned to the Bank, referenced the assignment of rents remedy, and therefore, the assignment of rents also was assigned. Defendants cite section 2—301 of the Uniform Commercial Code (Ill. Rev. Stat. 1987, ch. 26, par. 2—301). We find that plaintiffs' contention was not sufficiently supported to sustain their motion to dismiss.

■ Plaintiffs also asserted in their motion to dismiss that the affidavit attached to defendants' counterclaim was insufficient and that the judicial admissions doctrine barred defendants from introducing the installment note containing the purported endorsement of Two Bar B, since defendants first attached a copy of the note without an endorsement. Defendants respond that their amended counterclaim is sufficiently supported by the attached affidavit of Robert Loitz and copies of the note containing the endorsement of Two Bar B on the reverse side and by the agency agreement. Defendants contend that their initial failure to submit the reverse side of the installment note showing the endorsement of Two Bar B was not a judicial admission, since the initial representation, *i.e.*, their submission of only the front side of the note, was not in clear contradiction to their subsequent

representation, *i.e.*, attaching both the front and back sides of the note. The endorsement was contained on the reverse side of the note.

We agree with defendants that since the later submission of the reverse side of the installment note containing the endorsement was not in contradiction to the initial submission of only the front side of the document, the initial exhibit did not constitute a binding judicial admission regarding the reverse side of the note. (*Russell v. Subbiah* (1986), 149 Ill. App. 3d 268, 271-72, 500 N.E.2d 138, 141.) Further, we do not find an insufficiency in the affidavit attached to defendants' amended counterclaim. See *People v. Frieder* (1980), 90 Ill. App. 3d 116, 121-22, 413 N.E.2d 432, 436-37.

For the foregoing reasons, we reverse the judgment of the circuit court and remand this matter for further proceedings.

Judgment reversed and cause remanded.

RIZZI and WHITE, JJ., concur.