**Byron H. WEIS and Frank Pollack, etc., Plaintiffs,**

v.

**John F. WARK, individually, etc., et al., Defendants.**

No. 98 C 7090.

United States District Court, N.D. Illinois, Eastern Division.

March 2, 1999.

Laurence M. Landsman of Block & Landsman, Chicago, IL, for plaintiffs.

Howard W. Foster of Johnson & Bell, Ltd., Chicago, IL, for defendants.

### MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Byron Weis ("Weis") and Frank Pollack ("Pollack"), who list themselves as bringing this action "individually and derivatively on behalf of Overseas Development Corporation, a dissolved corporation,"[1] have brought this action to advance what they characterize as eight claims against one or more of several defendants: John F. Wark, individually and d/b/a Development Associates/John F. Wark ("Wark"), Nelson Hunt, June Mitchell, as Executor of the Estate of Jack F. Grimm, HGB Ventures, Inc., HGB Joint Venture and International TME Resources, Inc. Because this Court's initial November 12, 1998 memorandum opinion and order drew the attention of plaintiffs' counsel to subject matter jurisdictional flaws contained in the original Complaint (a failure to allege the requisite citizenship as to all parties to establish the existence of total diversity), counsel returned to the drawing board and filed the First Amended Complaint ("FAC") that provided the necessary information to confirm the existence of federal subject matter jurisdiction.

---

1. Those subjects—the Weis–Pollack entitlement or lack of entitlement to bring either individual or derivative claims on behalf of that dissolved corporation—form the subject of this opinion.

All defendants then responded with motions to dismiss part or all of the FAC. Because one facet of Wark's Fed.R.Civ.P. ("Rule") 12(b)(6) motion identified a problem that might prove fatal to the action as a whole, this Court promptly took recognition of the material differences between the purported Weis–Pollack individual claims and those asserted derivatively on behalf of Overseas Development Corporation ("Overseas").

As for the former, the FAC may be searched in vain for any such individual claims. Instead every grievance that Weis and Pollack advance, and any damages that they claim to have sustained, stem (1) from Overseas' asserted breach of the joint venture agreement to which it was a party or (2) from other related claims, all of which could have damaged Weis and Pollack only indirectly through the diminution in value of their stock ownership interest in Overseas. All *direct* damages (if any) stemming from defendants' claimed improper conduct would have been sustained only by Overseas and not by its officers, directors and shareholders such as Weis (FAC ¶ 4) and Pollack (FAC ¶ 6).

Under those circumstances a host of cases from our Court of Appeals (applying Illinois law) and the Illinois courts have consistently held that the only party with standing to sue (in the sense that it is the real party in interest under Rule 17(a)) is the corporation itself (see, e.g., *Frank v. Hadesman & Frank, Inc.,* 83 F.3d 158 (7th Cir.1996)). Because that principle served to dispatch all of the Weis–Pollack purported individual claims, this Court promptly ruled orally that any predicate for the survival of the FAC in those terms vanished immediately.

By contrast, Wark's motion attacking the Weis–Pollack purported derivative claims rested on the lateness of filing of this lawsuit. There is no dispute that Overseas was involuntarily dissolved on December 1, 1992, while this action was not brought until November 5, 1998, nearly six years later. That, Wark's motion asserted, required the lawsuit's dismissal under the limited post-dissolution survival provisions of 805 ILCS 5/12.80 ("Section 12.80"), part of the Illinois Business Corpora-

tion Act (which concededly controls, Overseas having been an Illinois corporation):

> The dissolution of a corporation either (1) by the issuance of a certificate of dissolution by the Secretary of State, or (2) by a judgment of dissolution by a circuit court of this State, or (3) by expiration of its period of duration, shall not take away nor impair any civil remedy available to or against such corporation, its directors, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within five years after the date of such dissolution. Any such action or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name.

This Court therefore directed the Weis–Pollack counsel to submit a memorandum limited to that issue, and they have accordingly tendered Plaintiffs Response to Defendant John Wark's Motion To Dismiss.

What is at issue is of course a question of Illinois law. And for that purpose it is conventional wisdom that Illinois law is what the Illinois courts say it is, not what federal courts may say. Some years ago our Court of Appeals issued a mea culpa acknowledgment that for something over two decades it had perpetuated an error in pronouncing and applying the Illinois law of piercing the corporate veil (*Van Dorn Co. v. Future Chem. & Oil Corp.,* 753 F.2d 565, 569–71 (7th Cir. 1985), disavowing the earlier characterization of Illinois law in *Steven v. Roscoe Turner Aeronautical Corp.,* 324 F.2d 157 (7th Cir. 1963) and in a number of other cases adhering to that characterization).

But here no such problem exists: Our Court of Appeals and the Illinois Appellate Courts are on precisely the same page. What our Court of Appeals said about the predecessor of Section 12.80 nearly 20 years ago in *Canadian Ace Brewing Co. v. Joseph Schlitz Brewing Co.,* 629 F.2d 1183 (7th Cir. 1980) has never been disavowed either by later Illinois decisions or by our Court of Appeals, although each of those forums has from time to time either distinguished or refused to distinguish *Canadian Ace* when

the problem has had to be addressed in different circumstances that called for or did not call for such distinctions.

What is perhaps most ironic about the Weis–Pollack current submission is that it has flagged for this Court's attention the more recent Court of Appeals decision in *Hunter v. Old Ben Coal Co.*, 844 F.2d 428 (7th Cir.1988) by pointing to the language of the decision's final footnote (*id.* at 435 n. 11) without recognizing (or at least without acknowledging) that *Hunter*'s strong relevance to the present problem points the way to *granting* rather than denying Wark's motion. Speaking for the Court of Appeals in *Hunter*, Judge Flaum carefully distinguished between *direct* claims by shareholders of a dissolved corporation and attempted *derivative* claims by such shareholders. Judge Flaum's opinion first applied the circumscribed scope of third party beneficiary law under the Illinois cases (principally what was then, and what still remains, the seminal decision in *Carson Pirie Scott & Co. v. Parrett*, 346 Ill. 252, 178 N.E. 498 (1931)), finding that the contract at issue in *Hunter* contained the required express third party direct benefit provisions in favor of certain of the dissolved corporation's shareholders. As *Hunter*, 844 F.2d at 433 said:

> We therefore also conclude that the district court erred in finding that the plaintiffs did not allege individual claims. The plaintiffs sued on their own behalf to enforce a contract under which they were third party beneficiaries and the parties to whom Old Ben owed a direct duty. We hold that the plaintiffs' right to enforce the option agreement was independent of [the dissolved corporation's] rights under the agreement and therefore was not derivative in nature.

By contrast, the agreement on which Weis and Pollack stake their bets here (a Mining Venture Agreement between Bushman Gold Company and Overseas) clearly contained no provisions of that sort. It cannot be disputed that all of the Agreement's benefits and burdens were those of Overseas and *only* Overseas, not those of any of its shareholders. And in that latter respect *Hunter* went on to examine the Illinois statutory predeces-

sor of the current Section 12.80, which had then provided only a two-year rather than a five-year post-dissolution survival period. Because the teaching of *Hunter* is so cogent for present purposes, this opinion will continue to quote liberally from its analysis.

After adverting to a number of cases construing and applying the statute that corresponded to Section 12.80, including *Canadian Ace* and the later Illinois Appellate Court decision in *Shute v. Chambers*, 142 Ill.App.3d 948, 97 Ill.Dec. 92, 492 N.E.2d 528 (1st Dist. 1986), *Hunter*, 844 F.2d at 434 (footnote omitted) went on to say:

> Derivative suits by former shareholders are therefore governed by the statute. It is possible, however, that the provision has an even broader scope—conceivably including certain suits by former shareholders brought in their individual capacity. While this is perhaps a tenable position, the implication of the Illinois decisions construing former section 94 is that only members' claims that are derivative in nature are barred if brought after the specified two-year period. These decisions indicate that section 94 and therefore the analogous paragraph 163a61, do not apply to a suit brought by a party in his or her individual capacity.

Then *Hunter* turned to *Shute* as to what it called "[t]he most helpful authority on this point" (*id.*). After describing that case (which involved a post-dissolution suit by shareholders on a promissory note in the dissolved corporation's favor), *Hunter*, *id.* at 434–35 continued:

> The primary issue the court had to resolve was whether the shareholders' claims were brought in their individual capacity or derivatively as shareholders. There was no question that the note was initially between BMS [the now-dissolved corporation] and Chambers. The difficult question was whether after the note had passed to the shareholders pursuant to BMS's dissolution, the shareholders held the note in their individual capacity; if so, the court assumed the shareholders could enforce the note despite the corporate survival statute. The Illinois Appellate Court concluded that the shareholders held the note in their individual capacity. The court stated: "After the corporate debts were

paid, [the note] became plaintiffs' individual property by operation of law. Their present right to sue on this debt is in no way derivative of any injury to the former corporation." *Id.* 492 N.E.2d at 532. The court therefore concluded that the survival statute did not bar the suit. *Id.*

The critical point for our purposes is the distinction drawn between claims held individually by former shareholders and claims held derivatively. If a claim is held individually, even if it arises in conjunction with a corporate matter (as in *Shute* and here), the corporate survival statute does not bar a suit to enforce the claim even if it is brought after the time period specified in the corporate survival statute. Because we find that plaintiffs' claims were individual claims and not derivative, we hold that their cause of action was not barred by paragraph 163a61.

And as if writing for the present case, a portion of *Hunter*'s n. 10 that immediately preceded the footnote cited in the Weis–Pollack response stated (*id.* at 435 n. 10):

> In contrast to the situation in *Koepke [v. First Nat. Bank of DeKalb,* 5 Ill.App.3d 799, 284 N.E.2d 671 (2 Dist.1972)], Poliquin, and Canadian Ace, Hunter and Snodsmith have brought an individual suit. This is not a situation where [the dissolved corporation's] shareholders failed to bring "an appropriate derivative action on behalf of the corporation within the time allowed" and now seek to bring the same claim by merely casting it as an individual suit. *Poliquin,* [28 Ill.Dec. 615,] 390 N.E.2d at 977–78 Rather, the plaintiffs seek to bring an individual action that they were always entitled to bring on their own behalf once Old Ben executed its option.

Unlike the situation in *Hunter,* this is exactly the type of case that was described in *Hunter*'s quotation from the Illinois Appellate decision in *Poliquin v. Sapp,* 72 Ill. App.3d 477, 28 Ill.Dec. 615, 390 N.E.2d 974 (4th Dist.1979)—one in which shareholders Weis and Pollack have "failed to bring 'an appropriate derivative action on behalf of the corporation within the time allowed' and now

seek to bring the same claim by merely casting it as an individual suit." That distinction directly teaches the applicability of the limited-time survival statute to the unquestionably derivative claims that are at issue here.

Weis and Pollack seek to escape that fatal blow by saying that *everything* belonging to the corporation, including potential claims on a corporate contract, passed to them as shareholders on Overseas' dissolution. But that position, which may state Illinois corporation law correctly as applied to the shareholders as a group (more on this later), proves too much. If that position were sound, it would eliminate any need for both the Illinois courts and our Court of Appeals to have engaged in *any* of the careful analysis that has marked their decisions. Indeed, it takes only a moment's thought to recognize that the Weis–Pollack position would read Section 12.80 right out of the Illinois statute book—for then the statute could never apply to bar *any* claim that the corporation might have asserted if it had not dissolved or been dissolved. By its express terms Section 12.80 extends not only to any right or claim existing before dissolution *against* the corporation or its shareholders, but also to any existing right or claim *in favor* of the corporation.[2] And that equally important provision of the statute would be rendered a nullity by the Weis–Pollack argument.

It should not be surprising that the Illinois cases support no such position as that now urged by Weis and Pollack. To the contrary, *Shute,* 142 Ill.App.3d at 953, 97 Ill.Dec. 92, 492 N.E.2d at 531–32 distinguished both *Canadian Ace* and *Poliquin* by holding as to the promissory note sued on in *Shute:*

> Defendant contends that since there is no judgment in this case, the claim is inchoate and barred by section 94. This argument is without merit. The purchase agreement and note represented a debt of which the fixed amount could be ascertained. And, either by operation of law or assignment, that asset became the individual property of the shareholders upon the corporation's dissolution.

---

**2.** Remember that the statute preserves as to any claim existing prior to the corporate dissolution, but only so long as suit is brought within five years after such dissolution, "any civil remedy

available" not only to the corporation itself but also "available to ... its directors, or shareholders."

*Shute* followed a New Hampshire case that had applied an identical holding to an identical asset. And that then led *Shute* to say (*id.* at 954, 97 Ill.Dec. 92, 492 N.E.2d at 532):

> The present action is not a suit by or against a dissolved corporation, but rather is a debt incurred by defendant as evidenced by the purchase agreement and installment note. After the corporate debts were paid, this asset became plaintiffs' individual property by operation of law. Their present right to sue on this debt is in no way derivative of an injury to the former corporation.

That same thing is true of *Lake County Trust Co. v. Two Bar B, Inc.*, 182 Ill.App.3d 186, 130 Ill.Dec. 686, 537 N.E.2d 1015 (1st Dist.1989). That case, which like *Shute* involved an action on a promissory note that had been owned by the then-dissolved corporation, reviewed *Shute* and held that it "governs the instant case" (182 Ill.App.3d at 194, 130 Ill.Dec. 686, 537 N.E.2d at 1020), quoting *Shute* as having "stated that the plaintiffs' right to sue on the debt incurred by the defendant was 'in no way derivative of an injury to the former corporation'" (*id.*).

Finally in terms of the Illinois case law, *Dubey v. Abam Bldg. Corp.*, 266 Ill.App.3d 44, 203 Ill.Dec. 176, 639 N.E.2d 215 (1st Dist.1994) applied the identical analysis to a lawsuit to recover a similarly liquidated amount—this time a security deposit under a lease. As *Dubey, id.* at 48, 203 Ill.Dec. 176, 639 N.E.2d at 219, concluded regarding such a claim:

> In *Canadian Ace Brewing Co.*, the Seventh Circuit concluded that for the purpose of determining whether a claim is barred by the corporate survival statute, an inchoate antitrust claim was not such an asset. In this case, however, plaintiff does not claim that his cause of action is in itself a corporate asset. Rather, plaintiff has brought a cause of action to recover a security deposit under a lease, which is generally considered to be a corporate asset to which former shareholders may succeed by operation of law following dissolution of the corporation. Thus, this case falls outside the scope of *Canadian Ace Brewing Co.* and within the scope of *Shute*. Consequently, plaintiff's claim was not barred by section 12.80 of the BCA and should not have been dismissed.

Whatever view may be taken of the distinction marked out by all of the cases, Illinois Appellate Court and Seventh Circuit decisions alike, what is eminently clear is that *none* of them adopts the position advanced by Weis and Pollack here—one that would judicially repeal the entire portion of the Illinois statute that sets a time limit on the assertion of corporate claims existing at the time of dissolution. If that position were right, the statute could *never* have any effect to bar *any* action brought on *any* claim that a corporation might have asserted had it not been dissolved. To put matters more simply, Weis and Pollack are dead wrong.

What has gone before sets out the conclusions that this Court had reached before counsel for all the parties came into court for the status hearing that this Court had set to follow promptly after submission of the Weis–Pollack response to Wark's motion. But during the course of that status hearing, during which this Court announced orally what is set forth in this opinion, this Court also inquired of counsel for Weis and Pollack whether those clients—the sole plaintiffs in this action—were the *only* shareholders in Overseas at the time of its dissolution (something that was not specifically alleged in FAC ¶¶ 4 and 6, which identified each of them only as "an officer, director and shareholder" of Overseas). In response to that question counsel said "No"—that there were indeed other shareholders.

That belated disclosure is truly astonishing, for it is painfully obvious that Weis and Pollack could not assert the derivative claims in the FAC even if everything that has gone before in this opinion were not a fair application of Section 12.80. If a corporation owns a potential cause of action at the time of its dissolution, at best that cause of action passes undivided to the corporate shareholders as a group. No individual shareholder, or any group of shareholders fewer than the entire assemblage, owns a slice or slices of such a cause of action. Indeed, even the types of claims recognized in *Shute, Lake County Trust* and *Dubey* as coming outside of the constraints of Section 12.80—promissory notes and lease security deposits—likewise devolve upon the corporate shareholders

as a group, with no individual shareholder acquiring a discrete aliquot part of such an asset on which a separate action may be brought. Most importantly, representations made by Weis and Pollack in their response on that score[3] are both false and misleading—they simply are not entitled on their own, without any express assignment to them of any such cause of action in its totality, to assert those claims derivatively on Overseas' behalf.

Until the disclosure of that previously-undisclosed disqualifier, this Court had not planned to pursue the request for sanctions in the form of attorneys' fees with which Wark's dismissal motion began and ended. After all, to this Court's knowledge no prior judicial opinion has had occasion to parse Section 12.80 and the case law construing it in the same manner that this opinion has done at such length. But the added structural defect that has doomed this action from the outset, and that was undisclosed by Weis and Pollack and their counsel until this Court's inquiry on that score, casts a different light on the matter. Accordingly this Court will order Weis and Pollack to respond on the issue of attorneys' fees as a sanction in light of this opinion.

### Conclusion

Wark's motion to dismiss this action in its entirety is granted. That moots the motions of all the other defendants for partial dismissal, given the fact that they derive the benefit of that total dismissal. Although the pendency of the portion of Wark's motion seeking an award of attorneys' fees as a sanction should not affect the finality of this order of dismissal (see *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988)), out of what

may be a superabundance of caution this Court expressly determines that there is no just reason for delay and expressly directs the entry of judgment dismissing both the FAC and this action in favor of all defendants and against Weis and Pollack (see Rule 54(b)).

With respect to the remaining facet of Wark's motion asking for sanctions, Weis and Pollack are ordered to file in this Court's chambers on or before March 15, 1999 a response identifying the basis for the objective good faith that Rule 11 required for their filing of both the original Complaint and the FAC. No reply will be required unless this Court so requests.

---

3. Here is Response at 6:

> Following the precedent of *Shute* and *Dubey,* it is clear that the Agreement in the present case, as an asset of ODC, was transferred by operation of law to its shareholders—Weis and Pollack—upon the corporation's dissolution. Thus, Plaintiffs "step into the shoes" of the party to the contract "with the same rights and obligations that [ODC] had before dissolution." *Dubey* at 218.

And here is Response at 10:

> Thus, Weis and Pollack's interest in the Agreement, obtained upon dissolution of ODC, is no different than if the corporation had assigned

to them all of its rights, title and interest in the Agreement. *Cf. Jansen v. Ameritel, Inc.,* 266 Ill.App.3d 734, 203 Ill.Dec. 587, 640 N.E.2d 14, 16 (1st Dist.1994) (assignee of dissolved corporation's claims could maintain suit against the defendants for tortiously interfering with the corporations contracts with approximately 200 persons).

Both those assertions are flat-out untrue in light of the just-disclosed revelation that Weis and Pollack were *not* Overseas' sole shareholders, nor were they the sole assignees of Overseas' rights under the Agreement or of the now-advanced claims.