2018 IL App (1st) 171317

No. 1-17-1317

Fourth Division
August 30, 2018

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

McGINLEY PARTNERS, LLC, an Illinois Limited
Liability Company,

     Plaintiff-Appellee,

v.

ROYALTY PROPERTIES, LLC, a Florida Limited
Liability Company; RICHARD KIRK CANNON, an
Individual; and MERYL SQUIRES CANNON, an
Individual,

     Defendants- Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Appeal from the Circuit Court
of Cook County.

No. 2014 L 005231

The Honorable
John C. Griffin,
Judge Presiding.

_____

JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices McBride and Ellis concurred in the judgment and opinion.

**OPINION**

¶ 1     The instant appeal arises from the attempt of plaintiff McGinley Partners, LLC, to enforce a note and guaranty executed by defendants Royalty Properties, LLC; Richard Kirk Cannon; and Meryl Squires Cannon in connection with the purchase of a horse farm. The trial court granted summary judgment in plaintiff's favor and set the matter for prove-up. Defendants challenged the interest claimed by plaintiff in the prove-up affidavit, arguing that the rate was usurious. The trial court initially permitted defendants to amend their answer to

include an affirmative defense of usury. However, it granted plaintiff's motion to reconsider and denied defendants leave to amend their answer, finding the issue waived and finding that the defense of usury was unavailable. The trial court entered judgment against defendants in the amount of $8,320,669.43. Defendants appeal and, for the reasons that follow, we affirm.

¶ 2                                    BACKGROUND

¶ 3        The underlying real estate transaction involved in the instant appeal has been considered twice by this court, first in *BMO Harris Bank, N.A. v. Royalty Properties, LLC*, 2016 IL App (1st) 151338-U, and later in *Royalty Farms, LLC v. Forest Preserve District*, 2017 IL App (1st) 161409. Accordingly, where appropriate, we draw from our prior decisions for our facts.

¶ 4        Defendants Richard and Meryl Cannon owned 43 horses, which resided on a farm in Barrington Hills owned by Horizon Farms, Inc. (Horizon Farms). In 2006, Horizon Farms solicited bids in an effort to sell the farm, and the Cannons submitted a bid of $19.35 million for the property, which was accepted. The Cannons made an earnest money deposit of nearly $2 million and financed the rest of the purchase price, primarily through obtaining a loan of $14.5 million from Amcore Bank in exchange for a mortgage on the property and the personal guaranties of the Cannons. In order to obtain this financing, Amcore Bank required the Cannons to form a limited liability corporation to sign for the loan. Accordingly, the Cannons created Royalty Properties, LLC (Royalty Properties), also named as a defendant in the instant litigation. In addition to the financing from Amcore Bank, Horizon Farms loaned $1.5 million to Royalty Properties. It is this loan that is the subject of the instant litigation.

¶ 5        In 2009, Amcore Bank filed a complaint to foreclose the primary mortgage. In 2010, during the pendency of the lawsuit, the loan was sold to BMO Harris Bank, which took over

the foreclosure action; BMO Harris Bank, in turn, sold the loan to the Forest Preserve District of Cook County (Forest Preserve) in June 2013. In August 2013, the trial court granted summary judgment in favor of the Forest Preserve and ordered foreclosure of the mortgage and sale of the farm. The Forest Preserve was the highest bidder at the foreclosure sale, and the trial court entered a $6.2 million deficiency judgment against defendants.[1]

¶ 6    On May 15, 2014, plaintiff filed a verified complaint against defendants to enforce the note and guaranty executed by them with respect to the Horizon Farms loan. The complaint alleged that, on December 21, 2006, Royalty Properties executed a promissory note in favor of Horizon Farms in the amount of $1.5 million, which was secured by a mortgage. The note was personally guaranteed by the Cannons pursuant to a guaranty agreement dated December 21, 2006. The complaint alleged that Horizon Farms' interest in the note and guaranty was assigned to the William J. McGinley Marital Trust (trust) upon the dissolution and liquidation of Horizon Farms. The complaint further alleged that, on November 10, 2009, the trust assigned all of its right, title, and interest in the note and guaranty to plaintiff McGinley Partners, LLC, and that plaintiff became the current owner and holder of the note and guaranty.

¶ 7    The complaint set forth two counts. The first count was for breach of the promissory note and was against Royalty Properties. Count I alleged that the note was in default as a result of nonpayment and that, as of May 14, 2014, $3,509,025.22 was due and owing under the note. Count I further alleged that under the terms of the note, interest continued to accrue at an

---

[1]Defendants appealed this order, resulting in our first decision, in which we found that summary judgment should not have been granted. *BMO Harris Bank*, 2016 IL App (1st) 151338-U. Additionally, Royalty Farms filed a separate suit against the Forest Preserve, alleging that the Forest Preserve breached the duties it assumed as a landlord when it purchased the farm. In our second appeal, we vacated the trial court's order granting possession of the property to the Forest Preserve during the pendency of the foreclosure action. *Royalty Farms*, 2017 IL App (1st) 161409. However, these events occurred after the filing of the instant lawsuit and are therefore not relevant to the issues on appeal.

annual rate of 20%. However, Royalty Properties had refused to pay the amounts due and owing under the note.

¶ 8        Count II was for breach of guaranty and was against the Cannons. Count II alleged that the Cannons guaranteed all sums due and owing under the note and that if the note was in default, plaintiff, as holder of the note, was permitted to demand payment of the note from the guarantors. However, despite the default on the note, the Cannons refused to pay the amounts due and owing under the note.

¶ 9        Attached to the complaint was a copy of the promissory note, dated December 21, 2006. The note was in the amount of $1.5 million, and the holder of the note was listed as Horizon Farms; the note had a maturity date of December 31, 2007. Pursuant to the terms of the note, the default interest rate was listed as "Lesser of (i) the Contract Rate plus five percent (5%) per annum, or (ii) the maximum amount permitted by applicable law." The "Contract Rate" was defined as "[a] rate of interest equal to twelve percent (12%) per annum until July 1, 2007; as of July 1, 2007, a rate of interest equal to fifteen percent (15%) per annum."

¶ 10        Also attached to the complaint was a copy of the guaranty, dated December 21, 2006. Section 1.1 of the guaranty set forth the scope of the guaranty and provided:

>        "Guarantor hereby irrevocably and unconditionally guarantees to Lender and its successors and assigns the payment and performance of the Guaranteed Obligations as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise. Guarantor hereby irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Obligations as a primary obligor."

¶ 11        Section 1.3 set forth the nature of the guaranty and provided:

"This Guaranty is an irrevocable, absolute, continuing guaranty of payment and performance and not a guaranty of collection. This Guaranty may not be revoked by Guarantor and shall continue to be effective with respect to any Guaranteed Obligations arising or created after any attempted revocation by Guarantor and after (if Guarantor is a natural person) Guarantor's death (in which event this Guaranty shall be binding upon Guarantor's estate and Guarantor's legal representatives and heirs). The fact that at any time or from time to time the Guaranteed Obligations may be increased or reduced shall not release or discharge the obligation of Guarantor to Lender with respect to the Guaranteed Obligations. This Guaranty may be enforced by Lender and any subsequent holder of the Note and shall not be discharged by the assignment or negotiation of all of part of the Note."

¶ 12        Section 5.6 set forth the parties bound by the guaranty and provided: "This Guaranty shall be binding upon and inure to the benefit of the parties hereto and their respective successors, assigns and legal representatives."

¶ 13        Also attached to the complaint was the affidavit of James McGinley, in which he averred, consistent with the allegations of the complaint, that Horizon Farms' interest in the note, mortgage, and guaranty was transferred to the trust in connection with the dissolution and liquidation of Horizon Farms. McGinley further averred that on November 10, 2009, the trust assigned all of its right, title, and interest in the note, mortgage, and guaranty to plaintiff McGinley Partners, LLC, and plaintiff was the current owner and holder of the note,

mortgage, and guaranty. Finally, McGinley averred that the three beneficiaries of the trust were Robert McGinley, Margaret McGinley, and himself.[2]

¶ 14    Finally, attached to the complaint was a document entitled "Assignment Agreement by and between Robert R. McGinley, James W. McGinley, Margaret McGinley as Trustees of The William J. McGinley Marital Trusts and McGinley Partners, LLC, an Illinois limited liability company." This assignment was dated November 10, 2009, and provided, in its recitals:

> "WHEREAS, on December 21, 2006, Horizon Farms, Inc., an Illinois corporation ('Horizon') received a $1,500,000 Promissory Note (the 'Note') from Royalty Properties, LLC ('Borrower'), which Note is secured by a Mortgage Security and Fixture Filing with respect to the property described on Exhibit A (the 'Mortgage') and an Assignment or [*sic*] Rents and Leases ('Assignment of Rents') relating to such property, each from Borrower and each dated as of December 21, 2006 and a Guaranty by Meryl J. Squires Cannon and Richard Kirk Cannon ('Guaranty'); and
>
> WHEREAS, Horizon, in connection with the dissolution and liquidation of Horizon, transferred the Note and Horizon's interest in and to the documents receiving the Note and relating to the Note to Assignor on December 26, 2006; and
>
> WHEREAS, Assignor wishes to assign the Note and related rights as hereinafter and valuable consideration."

¶ 15    On July 9, 2014, defendants filed a motion to dismiss the complaint pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2012)), claiming that

---

[2]We note that the affidavit names "James McGinley" as a beneficiary instead of "Robert McGinley." However, the record is clear that the three beneficiaries of the trust were Robert, Margaret, and James McGinley.

the complaint was barred by *res judicata* due to the litigation with Amcore Bank over the primary mortgage. In response, plaintiff claimed that it was entitled to choose whether to proceed either under the note or under the mortgage and had chosen to proceed under the note, separate from any foreclosure proceeding. On August 28, 2014, defendants voluntarily withdrew their motion to dismiss, and on October 22, 2014, defendants filed a new motion to dismiss.

¶ 16    In the new motion to dismiss, defendants claimed that when Horizon Farms assigned the note to the trust, Horizon Farms had already dissolved and, therefore, the assignment was limited to the rights that Horizon Farms held as a dissolved corporation. Specifically, defendants claimed that dissolved corporations maintained the right to file a cause of action for five years following the dissolution, pursuant to the survival statute in the Business Corporation Act of 1983 (805 ILCS 5/12.80 (West 2004)). Consequently, defendants argued that the assigned note was also subject to the five-year limitation, as an assignor cannot assign greater rights than it has itself. Since the complaint was filed in 2014, more than five years after the dissolution, defendants claimed it was time-barred. Defendants also argued that the obligations under the guaranty were discharged because defendants were not given notice of the assignment of the note, first to the trust and then to plaintiff, and these assignments changed the essential terms of the guaranty. On December 30, 2014, the trial court denied the motion to dismiss, finding that plaintiff had the same rights as Horizon Farms prior to the dissolution and was not barred by the five-year period set forth in the survival statute. The trial court further found that the assignment of the note did not materially change the terms of the guaranty such that the Cannons were discharged from their obligations.

¶ 17    On February 17, 2015, defendants filed a motion to reconsider, asking the court to modify its order to permit defendants to raise the issues of the five-year limitation and the notice of assignment as affirmative defenses to the complaint so that they would be permitted to engage in discovery on the issues. On March 20, 2015, the trial court clarified that its denial of the motion to dismiss did not prevent defendants from raising the same issues as affirmative defenses.

¶ 18    On April 8, 2015, defendants filed their verified answer and affirmative defenses. As affirmative defenses, defendants again raised the five-year survival period for causes of action, as well as a lack of notice concerning the assignment of the note. Attached to the answer was the affidavit of defendant Meryl Squires Cannon, who averred that through May 19, 2008, all checks issued for payment on the note were issued to Horizon Farms and that at no time did she receive notice that the note and guaranty had been assigned to any other party. Similarly, attached to the answer was the affidavit of defendant Richard Kirk Cannon, who averred that he never received "a direct notice" from Horizon Farms of any assignment of its interest in the note to the trust.

¶ 19    Also attached to the answer was a copy of the corporation file detail report from the Secretary of State's website indicating that Horizon Farms was a corporation that had been voluntarily dissolved on December 26, 2006. Additionally, attached to the answer was an assignment, dated December 26, 2006, which was entitled, "Agreement by and between Horizon Farms, Inc., an Illinois corporation and Robert R. McGinley, James W. McGinley, Margaret McGinley and Bank One Trust Company, N.A., as Trustee of The William J.

McGinley Marital Trusts."[3] The assignment stated that "Assignor, in connection with the dissolution and liquidation of Assignor, has transferred the Note to Assignee on the date hereof."

¶ 20    On May 13, 2015, plaintiff filed a motion for judgment on the pleadings, which was denied on August 21, 2015. On December 17, 2015, plaintiff filed a motion for summary judgment, arguing that defendants had admitted they were in default on the note and further arguing that there was no evidence to support either of defendants' affirmative defenses. With respect to the issue of whether there was any notice that the trust and, later, plaintiff, was the holder of the note, plaintiff produced a number of documents showing that defendants had been informed of the assignment and had been contacted by the trust and plaintiff regarding payment under the note. As relevant to the issues on appeal, on December 21, 2006, defendants executed an "assumption agreement" in which they stated that "Royalty and Purchaser each acknowledges and agrees that the anticipated liquidation and dissolution of Seller shall be without prejudice to the Seller's rights under the Agreement and that upon such liquidation and the transfer of such rights to Seller's assignees, such assignees shall be entitled to enforce such rights." Additionally, on May 14, 2008, defendants received an extension of the maturity date of the note from the trust; as part of the extension, the Cannons executed a confirmation that provided:

> "The undersigned Guarantors under that Guaranty dated December 21, 2006, for the benefit of Horizon Farms, Inc., hereby confirm to The William J. McGinley Marital Trusts, as the successor in interest to Horizon Farms, Inc., that the extension of the Maturity Date under the Note (as defined in the Guaranty) to June 21, 2008

---

[3]According to plaintiff's response to defendants' interrogatory, Bank One Trust Company, N.A., functioned only as the corporate trustee.

shall be without prejudice to the rights of Lender under the Guaranty and that such Guaranty is hereby reaffirmed and remains in full force and effect."

On June 10, 2016, plaintiff filed an amended motion for summary judgment to provide further factual support for its arguments.

¶ 21    In their response to the motion for summary judgment, defendants did not argue they lacked notice of the assignments of the note but instead argued that the assignments changed the material terms of the guaranty agreement such that it was no longer enforceable.

¶ 22    On August 31, 2016, the trial court issued an opinion granting plaintiff's amended motion for summary judgment. The court found that plaintiff had satisfied its obligations under the note and guaranty and further found that defendants admitted that they were in default on the note. The court found unpersuasive defendants' argument that the note and guaranty were unenforceable. With respect to the note, the court found that Horizon Farms properly assigned the note to the trust "and therefore, the five year corporate survival statute does not apply." With respect to the guaranty, the court found that the evidence in the record established that defendants received notice of the assignments and further found that there was no factual basis to support defendants' claim that the assignment changed the essential terms of the guaranty. The court noted that "[i]mportantly, in the 'Nature of Guaranty' section contained in the Guaranty, there is a provision that provides that the Guaranty is not discharged by an assignment of the Note. Specifically, the Guaranty states as follows: 'This Guaranty may be enforced by Lender and any subsequent holder of the Note and shall not be discharged by the assignment or negotiation of all or part of the Note.' " Accordingly, the trial court granted plaintiff's amended motion for summary judgment.

¶ 23    On September 13, 2016, plaintiff filed a prove-up affidavit, in which Robert McGinley averred that, as of September 20, 2016, $7,871,052.49 remained due and owing on the note. In response, defendants argued that the appropriate interest rate was 9% as set forth in the Interest Act (815 ILCS 205/4(1) (West 2014)), not the 20% that plaintiff had used in its calculation, and that charging a rate of 20% was usurious. In the alternative, defendants argued that the language in the note setting forth the interest rate was ambiguous, meaning that the Interest Act's 5% default interest rate should apply. In reply, plaintiff argued that the Interest Act did not set a 9% cap on the interest rate and that the terms of the note were not ambiguous. Additionally, plaintiff argued that defendants were estopped from claiming that the contractual terms were usurious because usury was an affirmative defense that must be specially pleaded.

¶ 24    On November 14, 2016, defendants filed a motion to amend their answer to the complaint to add defenses based on the Interest Act and usury. On November 16, 2016, the trial court granted defendants leave to file amended affirmative defenses based on the Interest Act on or before November 17, 2016. On November 17, 2016, defendants filed an amended verified answer and affirmative defenses, in which defendants added violation of the Interest Act as an affirmative defense, alleging that "the interest rates charged by the plaintiff are in violation of the Illinois Interest Act [citation], usurious in nature, unenfor[c]eable as a matter of law, and give rise to penalties and/or set-offs in favor of defendants."

¶ 25    On November 18, 2016, the trial court issued an opinion concerning the amount of damages. In considering whether the interest rate was usurious, the court noted that if the note was a personal loan, the Interest Act would apply, and the maximum permitted interest rate would be 9%. However, if the note was a business-related loan to a corporation, the

Interest Act would not apply and the 20% interest rate would be valid. The court further noted that defendants claimed that the loan was a personal one and that the property was intended to be maintained as a residence. The court found that this presented a question of fact that meant that it could not grant the amount of damages set forth in the prove-up affidavit.

¶ 26    On November 29, 2016, plaintiff filed a motion to reconsider the trial court's November 16, 2016, and November 18, 2016, rulings. First, plaintiff argued that the trial court erred in permitting defendants to amend their answer to add the affirmative defense of usury since defendants sought to do so only after summary judgment had been granted. Additionally, plaintiff argued that the trial court erred in finding that there was a question of fact concerning the applicability of the Interest Act, because the corporate loan exception of section 205/4(1)(a) (815 ILCS 205/4(1)(a) (West 2014)) was not limited to "business" loans but applied to any loan involving a corporation. Plaintiff further argued that the mortgage exception of section 205/4(1)(*l*) (815 ILCS 205/4(1)(*l*) (West 2014)) applied because the note was secured by a mortgage.

¶ 27    On February 2, 2017, the trial court issued an opinion on plaintiff's motion to reconsider. The trial court found that defendants had waived their usury defense by failing to plead it in their answer. The court further found that even if it had not been waived, the usury defense was defeated by the mortgage exception to the Interest Act because section 205/4 "clearly establishes an exception to the usury defense for mortgages on real estate." Accordingly, the court granted plaintiff's motion for reconsideration and entered judgment in favor of plaintiff and against defendants in the amount of $8,320,669.43.

¶ 28    On March 3, 2017, defendants filed a motion to modify or vacate the trial court's February 2, 2017, judgment, which was denied on April 24, 2017. This appeal follows.

¶ 29                                    ANALYSIS

¶ 30    On appeal, defendants make three arguments: (1) that the trial court erred in finding that the claim on the note was not barred by the five-year survival period for claims by a dissolved corporation, (2) that the trial court erred in finding that the assignments did not materially alter the terms of the guaranty, and (3) that the trial court erred in finding that the defense of usury was inapplicable to the instant case. We consider each issue in turn.

¶ 31                              I. Survival Statute

¶ 32    Defendants first argue that the trial court erred in granting summary judgment in favor of plaintiff, claiming that the trial court should have found that the claim under the note was time-barred. A trial court is permitted to grant summary judgment only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016). The trial court must view these documents and exhibits in the light most favorable to the nonmoving party. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). We review a trial court's decision to grant a motion for summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 33    "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp.*, 154 Ill. 2d at 102.

However, "[m]ere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999). The party moving for summary judgment bears the initial burden of proof. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). The movant may meet his burden of proof either by affirmatively showing that some element of the case must be resolved in his favor or by establishing " 'that there is an absence of evidence to support the nonmoving party's case.' " *Nedzvekas*, 374 Ill. App. 3d at 624 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). " 'The purpose of summary judgment is not to try an issue of fact but *** to determine whether a triable issue of fact exists.' " *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 708 (2002) (quoting *Luu v. Kim*, 323 Ill. App. 3d 946, 952 (2001)). We may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992).

¶ 34    In the case at bar, defendants argue the trial court erred in not dismissing plaintiff's action as time-barred under the corporate survival statute set forth in the Business Corporation Act of 1983 (Act) (805 ILCS 5/12.80 (West 2014)). The Act governs the dissolution of corporations and permits a dissolved corporation to conduct business "necessary to wind up and liquidate its business and affairs." 805 ILCS 5/12.30(a) (West 2014). After dissolution, the Act allows a corporation to "transfer good and merchantable title to its assets." 805 ILCS 5/12.30(b) (West 2014). However, the Act's corporate survival statute extinguishes any civil remedy "to or against such corporation, its directors, or shareholders, for any right or claim," five years after the dissolution of the corporation. 805 ILCS 5/12.80 (West 2014).

¶ 35    A corporate survival statute is not a statute of limitations. *Michigan Indiana Condominium Ass'n v. Michigan Place, LLC*, 2014 IL App (1st) 123764, ¶ 12. "Under

common law, a dissolved corporation could not sue or be sued." *Henderson-Smith & Associates, Inc. v. Nahamani Family Service Center, Inc.*, 323 Ill. App. 3d 15, 19-20 (2001). Thus, in contrast to a statute of limitations, which would limit existing causes of action to five years, section 12.80 grants the right to bring causes of action that would otherwise not exist for five years following the dissolution of the corporation. *Michigan Indiana Condominium Ass'n*, 2014 IL App (1st) 123764, ¶ 12. If the cause of action would exist even without the corporate survival statute, then it is not extinguished by the end of the five-year period. See *Michigan Indiana Condominium Ass'n*, 2014 IL App (1st) 123764, ¶¶ 11-12.

¶ 36        In the case at bar, the cause of action at issue is for the enforcement of the promissory note and guaranty executed by defendants. This court has recognized an action to enforce a note by the transferee of a dissolved corporation as falling outside the corporate survival statute. *Lake County Trust Co. v. Two Bar B, Inc.*, 182 Ill. App. 3d 186, 194 (1989). This reasoning was first formulated in *Shute v. Chambers*, 142 Ill. App. 3d 948 (1986). Like the case at bar, the *Shute* court considered whether the enforcement of a promissory note by shareholders of a dissolved corporation was time-barred. The plaintiffs presented evidence that the corporation assigned the note to its two shareholders eight days after executing articles of dissolution. *Shute*, 142 Ill. App. 3d at 949-50. After rejecting the defendant's claim that the corporate survival statute barred the plaintiffs' action as waived for untimely pleading, the court nevertheless found that the plaintiff-shareholders could bring an action to enforce the note after the expiration of the survival period. *Shute*, 142 Ill. App. 3d at 952-54.[4] Since "[e]ven without the purported assignment, the remaining assets of the dissolved

---

[4]The *Shute* court examined section 94 of the Business Corporation Act (Ill. Rev. Stat. 1983, ch. 32, ¶ 157.94) , a previous iteration of the corporate survival statute under which the survival period was two years instead of five. *Shute*, 142 Ill. App. 3d at 949. The supreme court has recognized that "[e]xcept for a shorter survival period, *** section 94 was identical to section 12.80." *Pielet v. Pielet*, 2012 IL 112064, ¶ 34.

corporation, including contractual rights secured by a note, would pass to the shareholders by operation of law" (*Shute*, 142 Ill. App. 3d at 952), barring enforcement of the note would lead to the absurd result of "barring former shareholders from enforcing rights to corporate assets at the same time they succeeded to ownership of the assets by operation of law" (*Shute*, 142 Ill. App. 3d at 954). To avoid this result, the court concluded that fixed and ascertainable assets like promissory notes become the "individual property of the shareholders upon the corporation's dissolution." *Shute*, 142 Ill. App. 3d at 953.

¶ 37    In *Lake County Trust Co.*, this court applied the *Shute* court's reasoning in finding that a corporate survival statute was not applicable to the enforcement of an assignment of rents and installment note assigned by a dissolved corporation. *Lake County Trust Co.*, 182 Ill. App. 3d at 194. *Lake County Trust Co.* construed *Shute* as having "held that the shareholders could maintain an action in their own capacities on a note naming the dissolved corporation as payee, even though suit was not initiated within the statutory survival period for actions by or against dissolved corporations."[5] *Lake County Trust Co.*, 182 Ill. App. 3d at 194. Accepting the *Shute* court's reasoning as "governing," this court found that the corporate survival statute was not applicable to an action for the enforcement of the note and assignment of rents by a dissolved corporation's assignee. *Lake County Trust Co.*, 182 Ill. App. 3d at 194.

¶ 38    In *Dubey v. Abam Building Corp.*, 266 Ill. App. 3d 44 (1994), this court again drew from the *Shute* court's reasoning in finding that an action exercising the right to a security deposit passing by operation of law from a dissolved corporation to its sole shareholder was not

___

[5]While the *Lake County Trust Co.* court considered this *Shute*'s "holding," the *Shute* court's discussion of this issue is arguably *dicta* since the court also found the assertion of the claim waived because it was not timely filed. Nevertheless, the *Shute* court's reasoning remains instructive and, as discussed herein, several courts have since relied on its analysis and reasoning.

barred by the corporate survival statute. Rejecting any argument that a dissolved corporation could only transfer a claim subject to a five-year time limitation because the corporation itself could only bring the claim under section 12.80, the *Dubey* court concluded that the transferee of a fixed debt, whether by assignment or process of law, steps into the shoes of the corporation "with the same rights and obligations that the corporation had *before* dissolution." (Emphasis added.) *Dubey*, 266 Ill. App. 3d at 47. Since the corporation was not bound by the five-year period before its dissolution, the transferee is also not bound by the corporate survival statute. See *Dubey*, 266 Ill. App. 3d at 47.

¶ 39     Defendants argue *Dubey* permits only a sole shareholder of a dissolved corporation to step into the shoes of a corporation upon its dissolution. This interpretation, however, is inconsistent with the court's reasoning and with its use of the plural in its finding that "[w]hatever assets a dissolved corporation has belong to the former shareholders, subject to the rights of creditors." *Dubey*, 266 Ill. App. 3d at 47.

¶ 40     Additionally, we are unpersuaded by defendants' argument that *Shute, Lake County Trust Co.*, and *Dubey* were "overturned" by the supreme court's decision in *Pielet*, 2012 IL 112064. *Pielet* concerned a breach of contract claim brought against a dissolved corporation in which the alleged breach did not accrue until after the corporation's dissolution. *Pielet*, 2012 IL 112064, ¶ 32. Thus, the issue considered by the court was whether the corporate survival statute created a right to bring the postdissolution claim at all,[6] not whether the right had been extinguished by the expiration of the five-year period. The supreme court found that the statute did not allow actions to be brought against a corporation for a claim accruing

_____

[6]The version of the statute considered by the *Pielet* court did not permit the filing of claims accruing postdissolution. The statute has since been amended to permit such claims. 805 ILCS 5/12.80 (West 2014) ("for any right or claim existing, or any liability accrued or incurred, either prior to, at the time of, or after such dissolution").

after the corporation's dissolution, even if based on its predissolution obligations. *Pielet*, 2012 IL 112064, ¶¶ 32-33.

¶ 41   Defendants claim *Pielet* applies to all actions to enforce the rights of a since-dissolved corporation even when the corporation transferred away its right by assignment or operation of law. This expansive interpretation of *Pielet* is not persuasive. While the *Pielet* court recognized section 12.80 as establishing a "fixed endpoint" for those claims governed by the statute, it does not modify the inapplicability of the corporate survival statute to the types of claims recognized by this court in *Shute, Lake County Trust Co.*, and *Dubey*. *Pielet*, 2012 IL 112064, ¶ 32 n.3. Therefore, the *Pielet* decision is only applicable to those causes of action governed by the corporate survival statute: "any civil remedy available to or against such corporation, its directors, or shareholders." 805 ILCS 5/12.80 (West 2014).

¶ 42   In the case at bar, plaintiff has not brought a claim as or against a dissolved corporation. The dissolved corporation, Horizon Farms, Inc., is not a party to this lawsuit. Nor is plaintiff's claim brought as the director of a dissolved corporation. Accordingly, section 12.80 is not applicable. [7]

¶ 43   Defendants claim the plaintiff's action is derivative, since derivative action on behalf of a dissolved corporation is subject to the statutory bar as an action by the shareholders of the dissolved corporation. *Poliquin v. Sapp*, 72 Ill. App. 3d 477, 481-82 (1979). An action is derivative when brought by a shareholder "on behalf of a corporation to seek relief for injuries done to that corporation." *Goldberg v. Astor Plaza Condominium Ass'n*, 2012 IL App (1st) 110620, ¶ 52.

---

[7]Since section 12.80 is inapplicable to the cause of action at issue, the effect of the post-*Pielet* amendment need not be considered in the case at bar.

¶ 44   In *Poliquin*, the court considered a claim brought by a dissolved corporation's shareholders against its former directors and another corporation they organized for a scheme to defraud the first corporation. *Poliquin*, 72 Ill. App. 3d at 478-79. The court concluded that when injuries are "incurred by the corporation then the shareholders can only sue upon a derivative basis and not as individuals," and were therefore barred when brought after the time period prescribed by the corporate survival statute. *Poliquin*, 72 Ill. App. 3d at 480. *Poliquin* drew from the court's holding in *Koepke v. First National Bank of De Kalb*, 5 Ill. App. 3d 799 (1972). In *Koepke*, the court found a suit in equity for a breach of contract filed by a shareholder on behalf of all shareholders of a dissolved corporation similarly barred when brought after the statutory survival period. *Koepke*, 5 Ill. App. 3d at 799-800.

¶ 45   In the case at bar, plaintiff's cause of action can be clearly distinguished from *Poliquin* and *Koepke*, and contrary to defendants' argument, neither case is incompatible with the *Shute* court's reasoning as applied by the courts in *Lake County Trust Co.* and *Dubey*. First, both *Poliquin* and *Koepke* concerned inchoate and indeterminate claims as opposed to the *Shute* category of fixed and ascertainable debts encompassing plaintiff's promissory note. A claim to the enforcement of the fixed debt is the individual property of the transferee and is in " 'no way derivative of an injury to the former corporation.' " *Lake County Trust Co.*, 182 Ill. App. 3d at 194 (quoting *Shute*, 142 Ill. App. 3d at 954). A fixed debt is an asset similar in its characteristics to tangible property. See *Dubey*, 266 Ill. App. 3d at 47 (citing *Canadian Ace Brewing Co. v. Joseph Schlitz Brewing Co.*, 629 F.2d 1183, 1187 (7th Cir. 1980)). The supreme court has long recognized that upon the dissolution of a corporation, its property does not become unowned. *Gulf Lines Connecting R.R. of Illinois v. Golconda Northern Ry.*, 290 Ill. 384, 392 (1919). As the *Shute* court reasoned, interpreting the corporate survival

19

statute as recognizing no distinction between assigned fixed debts and derivative claims would lead to absurd results incompatible with the right of a dissolving corporation to assign "good and merchantable title to its assets" granted by section 12.30. *Shute*, 142 Ill. App. 3d at 954; 805 ILCS 5/12.30(b) (West 2014).

¶ 46    In the case at bar, plaintiff brought his right of action as an assignee, not as a shareholder. Plaintiff was never a shareholder of the dissolved corporation, Horizon Farms. Since the note was assigned by Horizon Farms before defendants' default, plaintiff's cause of action cannot be derivative because the dissolved corporation suffered no injury from which a claim could be derived. Since plaintiff's action is neither as or against a dissolved "corporation, its directors, or shareholders" (805 ILCS 5/12.80 (West 2014)), the corporate survival statute remains inapplicable.

¶ 47    We also find defendants' argument that the reasoning of *Shute, Lake County Trust Co.*, and *Dubey* was criticized by the Second District appellate court's decision in *Hamilton v. Conley*, 356 Ill. App. 3d 1048 (2005), to be unpersuasive. *Hamilton* concerned the issue of whether a former shareholder of a dissolved corporation could bring an action against a corporate officer who misappropriated the corporation's assets for personal benefit. *Hamilton*, 356 Ill. App. 3d at 1051. This claim of "self-dealing" by a corporate officer provides another clear example of a derivative claim barred under the corporate survival statute. *Hamilton*, 356 Ill. App. 3d at 1054. Defendants direct this court's attention to a single sentence in which the *Hamilton* court cites *Grunloh v. Effingham Equity, Inc.*, 174 Ill. App. 3d 508, 522 (1988), as implicitly finding the corporate survival statute applicable "to corporate claims, even though they may have been transferred to the corporation's assignees or devolved to its shareholders." *Hamilton*, 356 Ill. App. 3d at 1059. Again, however, both

20

cases concern derivative claims that belong to the dissolved corporation, as opposed to the situation present in the case at bar, in which the claim is a direct claim made by plaintiff and not a claim that belongs to the dissolved corporation.

¶ 48    Finally, we find defendants' argument that the federal courts have shown hostility to the reasoning of *Shute* to be unpersuasive. In *Weis v. Wark*, 36 F. Supp. 2d 805, 806 (N.D. Ill. 1999), the federal district court of the Northern District of Illinois considered a derivative action brought by a former shareholder on behalf of a dissolved corporation. While rejecting the suit as barred by the corporate survival statute, the court found that a potential cause of action owned by a corporation "passes undivided to the corporate shareholders as a group" at the time of dissolution. *Weis*, 36 F. Supp. 2d at 809. Defendants cite this finding as a rejection of the *Shute* reasoning; however, the *Weis* court interpreted its decision as in harmony with the reasoning of *Shute*. It accepted the "types of claims recognized in *Shute, Lake County Trust* and *Dubey* as coming outside of the constraints of Section 12.80." *Weis*, 36 F. Supp. 2d at 809.

¶ 49    Six years later, the United States Court of Appeals for the Seventh Circuit recognized promissory notes as falling outside the corporate survival statute in *Sharif v. International Development Group*, 399 F.3d 857 (7th Cir. 2005). *Sharif* dealt with a breach of contract action brought by a shareholder of a dissolved corporation filed after the end of the statutory survival period. *Sharif*, 399 F.3d at 859. The plaintiff argued that his breach of contract claim was not time-barred because it was analogous to the fixed debt of a promissory note under the *Shute* reasoning. *Sharif*, 399 F.3d at 861-62. The Seventh Circuit rejected this argument by distinguishing the plaintiff's open-ended breach of contract claim from the ascertained and fixed nature of a promissory note. It found the plaintiff's choice to bring his action as a

standard breach of contract claim rather than as a claim for the enforcement of a promissory note was fatal to his case since "Illinois courts do not apply the corporate survival statute to bar claims arising from 'a debt of which the fixed amount could be ascertained.' " *Sharif*, 399 F.3d at 862 (quoting *Shute*, 142 Ill. App. 3d at 953).

¶ 50    In the case at bar, the promissory note was assigned first to the trust, then to plaintiff. Accordingly, at the time of defendants' failure to pay on the note, it no longer belonged to the dissolved corporation but was the individual property of plaintiff by operation of law. Plaintiff's action was neither brought by, for, or on behalf of the dissolved corporation. Therefore, the corporate survival statute does not apply to bar plaintiff's action for enforcement of the note.

¶ 51                                      II. Guaranty

¶ 52    Defendants next argue that the trial court erred in finding that the assignments of the note and guaranty did not materially change the nature of the guaranty. "A guarantor's liability depends on the guaranty contract," to which general principles of contract construction apply. *Southern Wine & Spirits of Illinois, Inc. v. Steiner*, 2014 IL App (1st) 123435, ¶ 16 (citing *Du Quoin State Bank v. Daulby*, 115 Ill. App. 3d 183, 185 (1983)). "A guarantor has acquired status as a favorite of the law, and when construing liability the court accords the guarantor the benefit of any doubts that may arise from the language of the contract." *Southern Wine & Spirits*, 2014 IL App (1st) 123435, ¶ 16 (citing *Schiff v. Continental National Bank & Trust Co. of Chicago*, 255 Ill. App. 333, 340 (1930)). "[T]he scope of a guarantor's liability extends no further than that which the guarantor has agreed to accept," and courts will strictly construe the guaranty agreement in favor of the guarantor. *Southern Wine & Spirits*, 2014 IL App (1st) 123435, ¶ 16 (citing *Riley Acquisitions, Inc. v. Drexler*,

22

408 Ill. App. 3d 397, 403 (2011)). However, "[w]here a guaranty is unequivocal, it must be construed according to the terms and language used, as it is presumed the parties meant what the language imports." *Southern Wine & Spirits*, 2014 IL App (1st) 123435, ¶ 16 (citing *Farmers State Bank v. Doering*, 80 Ill. App. 3d 959, 961 (1980)).

¶ 53      In the case at bar, defendants argue that the assignment of the note and guaranty operated to discharge their obligations under the guaranty. "The general rule is that guaranties are not assignable." *Southern Wine & Spirits*, 2014 IL App (1st) 123435, ¶ 18 (citing *Second National Bank of Peoria v. Diefendorf*, 90 Ill. 396, 407 (1878)). However, "that rule is not applied mechanically; rather, the facts of each case determine whether the policy underlying the rule applies." *Roels v. Drew Industries, Inc.*, 240 Ill. App. 3d 578, 581 (1992). "Thus, a guarantor is not released unless the essentials of the original contract have been changed and the performance required of the principal is materially different from that first contemplated." *Roels*, 240 Ill. App. 3d at 581. "Whether a guarantor is exposed to an increase in the risk it originally undertook is a key variable in determining whether there has been a material change in the guaranty agreement." *Roels*, 240 Ill. App. 3d at 582.

¶ 54      Here, we agree with the trial court that there is no indication that the essentials of the original contract had changed or that the Cannons were exposed to an increase in risk. In executing the guaranty, the Cannons guaranteed the payment of the obligations of the note. In doing so, they expressly agreed that: "This Guaranty may be enforced by Lender and any subsequent holder of the Note and shall not be discharged by the assignment or negotiation of all of part of the Note." The Cannons further agreed that: "This Guaranty shall be binding upon and inure to the benefit of the parties hereto and their respective successors, assigns and legal representatives." Additionally, on the same day and prior to executing the note and

guaranty, defendants also executed an "assumption agreement" in which they agreed that "Royalty and Purchaser each acknowledges and agrees that the anticipated liquidation and dissolution of Seller shall be without prejudice to the Seller's rights under the Agreement and that upon such liquidation and the transfer of such rights to Seller's assignees, such assignees shall be entitled to enforce such rights." This express agreement that the guaranty was assignable distinguishes the instant case from *Southern Wine & Spirits*, a case on which defendants heavily rely. See *Chicago Exhibitors Corp. v. Jeepers! of Illinois, Inc.*, 376 Ill. App. 3d 599, 609 (2007) (finding guaranty remained in effect in light of express provisions of guaranty permitting assignments and modifications of lease). Furthermore, defendants admit that they were fully aware at the time of the signing of the guaranty that the Horizon Farms corporation would be dissolving, which it did five days after the execution of the note and guaranty. Yet, they claim that even the first assignment of the note and guaranty—to the trust, which occurred on the very date of dissolution—altered the risk they agreed to undertake and discharged them of their obligations under the guaranty. Such a result would render the guaranty completely illusory.

¶ 55     Moreover, defendants reaffirmed the obligations of the guaranty on May 14, 2008, when the note and guaranty were held by the trust, when they received an extension of the maturity date of the note. As part of the extension, the Cannons executed a confirmation that provided:

> "The undersigned Guarantors under that Guaranty dated December 21, 2006, for the benefit of Horizon Farms, Inc., hereby confirm to The William J. McGinley Marital Trusts, as the successor in interest to Horizon Farms, Inc., that the extension of the Maturity Date under the Note (as defined in the Guaranty) to June 21, 2008

24

shall be without prejudice to the rights of Lender under the Guaranty and that such Guaranty is hereby reaffirmed and remains in full force and effect."

Thus, we cannot find that the assignment of the note and guaranty somehow changed the risks that the Cannons had agreed to assume.

¶ 56    Additionally, it is important to note that the obligations that the original contract concerned was, namely, payment of a definite amount set forth in the note. As we previously explained, "[w]hether a guarantor is exposed to an increase in the risk it originally undertook is a key variable in determining whether there has been a material change in the guaranty agreement." *Roels*, 240 Ill. App. 3d at 582. "A guarantor takes a risk in exchange for a benefit; when events beyond the guarantor's control dramatically increase the risk, the assumptions upon which the contract was founded are undercut." *Roels*, 240 Ill. App. 3d at 582. "The principle that a substantial increase in risk discharges the guaranty rests on the assumption that guarantors would not ordinarily tolerate a substituted increase in risk without seeking something in return." *Roels*, 240 Ill. App. 3d at 582.

¶ 57    In the case at bar, a change in the party entitled to enforce the note and guaranty did not change the obligations of the borrower or the guarantors. Royalty Properties was still required to pay the amount due under the note, and if it did not do so, the Cannons would be obligated to do so. The assignments did not increase the amount due or impose any other terms. Consequently, there is no legal basis for finding a discharge of the guarantors' obligations. See *Chicago Exhibitors Corp.*, 376 Ill. App. 3d at 608 (finding no material change in terms of a lease agreement where "[n]one of [the changes] altered the performance required by the tenant, such as the amount of rent owed under the lease, the terms of lease, or the basic relationship between the tenant and landlord"); *Roels*, 240 Ill. App. 3d at 583

(finding the guarantor was required to pay an employee pursuant to the terms of his employment contract despite the change of ownership of the company because "[t]ransfer or assignment of the employment contract to the survivor corporation neither increased nor materially altered the risk of the defendant-guarantor"). This is yet another way this case is distinguishable from *Southern Wine & Spirits*, in which the amount owed could vary month to month, "resulting necessarily in a fluctuation in the risk." *Southern Wine & Spirits*, 2014 IL App (1st) 123435, ¶ 21. In that case, "[w]hile a variable risk is to be expected with a personal guaranty in a merchant-wholesaler relationship, because defendants were not aware that Morand had purportedly assigned the personal guaranty to Southern, defendants were not aware they were incurring any risk when Superior purchased goods from Southern. This constitutes a material change in the terms of the agreement defendants entered into with Morand." *Southern Wine & Spirits*, 2014 IL App (1st) 123435, ¶ 21. In the case at bar, by contrast, there is no such variable risk and no material change to the terms of the contract. Accordingly, we cannot find the Cannons discharged from their obligations under the guaranty by virtue of the assignments here.

¶ 58                                    III. Usury

¶ 59        Finally, defendants claim that the trial court erred when it reconsidered its order permitting them to amend their complaint to add the affirmative defense of usury. "The purpose of a motion to reconsider is to bring to the court's attention newly discovered evidence that was not available at the time of the original hearing, changes in existing law, or errors in the court's application of the law." *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 36. "A ruling on a motion to reconsider is within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion." *Robidoux v. Oliphant*, 201

Ill. 2d 324, 347 (2002). We note that defendants in their reply brief argue that this issue should be reviewed *de novo*, as they contend the trial court misapprehended the law. However, under either standard of review, our result would be the same.

¶ 60　　　In the case at bar, the trial court gave two reasons for its reconsideration of the availability of usury as an affirmative defense. First, the trial court found that defendants had waived their usury defense by failing to plead it in their answer. Additionally, the court found that even if it had not been waived, the usury defense was defeated by the mortgage exception to the Interest Act because section 205/4 "clearly establishes an exception to the usury defense for mortgages on real estate." Thus, if we agree with the trial court on either aspect, we may affirm its judgment. Here, we agree with the trial court with respect to its interpretation of the Interest Act's mortgage exception.

¶ 61　　　"The maximum rate of interest that may lawfully be contracted for is determined by the law applicable thereto at the time the contract is made." 815 ILCS 205/4(1) (West 2004). Accordingly, we apply the law as it was in 2006, the time the contract was made.[8] Under the Interest Act, parties to a written contract are generally limited to a 9% maximum interest rate. 815 ILCS 205/4 (West 2004). However, there are a number of exceptions to this maximum. The one relied on by the trial court in the instant case is the mortgage exception, which provides:

> "It is lawful to charge, contract for, and receive any rate or amount of interest or compensation with respect to the following transactions:
>
> ＊ ＊ ＊

---

[8]We note that the law applicable to the issues in the instant case has not changed since the time the contract was made.

(*l*) Loans secured by a mortgage on real estate[.]" 815 ILCS 205/4(1)(*l*) (West 2004).

In the case at bar, the note was secured by a mortgage on real estate. Accordingly, by the express terms of the Interest Act, the 9% cap on interest does not apply and the trial court correctly so found.

¶ 62    Defendants argue that plaintiff cannot rely on this exception because it made clear that it was filing suit under the note, not under the mortgage. "Illinois law permits a creditor to elect to sue on the note or foreclose on the mortgage or both." *Cathay Bank v. Accetturo*, 2016 IL App (1st) 152783, ¶ 31 (citing *Abdul-Karim v. First Federal Savings & Loan Ass'n of Champaign*, 101 Ill. 2d 400, 407 (1984)). Here, plaintiff chose to sue on the note. However, defendants provide no authority suggesting that simply because a creditor makes the choice to sue on a note, it is thereby prevented from relying on the mortgage exception to the Interest Act when real estate is involved. Such a result would lead to effectively forcing a creditor to foreclose any time the interest rate exceeds 9% because, otherwise, such an interest rate would be found to be usurious. We cannot reach such a conclusion in the complete absence of any suggestion that the legislature intended for the Interest Act to be interpreted in such a way. Defendants have not cited any authority for this interpretation, and we cannot find any.

¶ 63    Defendants additionally argue that the mortgage exception should not apply "because there is a question of fact of whether the transaction relating to the purchase of Horizon Farms by Royalty Properties was constructed to evade the Interest Act." Defendants claim that plaintiff intentionally violated the Interest Act because the contract rate increases during the term of the loan, "even though it was known to Horizon Farms, Inc. that the purpose of

the loan transaction was to buy the Horizon Farms estate, maintain it, and use it as a residence." However, defendants point to no evidence to support the existence of such a question of fact. At most, defendants point to allegations made against Amcore Bank with respect to the primary loan on the property and simply apply those same allegations to plaintiff. Indeed, one of the documents submitted by defendants cuts against their argument, suggesting business purposes to their purchase, such as "build[ing] the farm into a premier breeding and training horse farm where we hold hunts and train horses for the Kentucky Derby."

¶ 64    Furthermore, even if the mortgage exception did not apply, a different exception would— section 205/4(1) also contains an exception for "[a]ny loan made to a corporation." 815 ILCS 205/4(1)(a) (West 2004). Contrary to defendants' assertions, the Interest Act does not require such a loan to be classified as a *business* loan,[9] meaning that it would apply regardless of whether the property was to be maintained as a residence or for business purposes. Consequently, even if we accepted defendants' claims about the purpose of the loan, it would not change the result and the Interest Act would remain inapplicable because the loan was made to a corporation.

¶ 65    We are also unpersuaded by defendants' argument that the language setting forth the interest rate in the note is ambiguous. Pursuant to the terms of the note, the default interest rate was listed as "Lesser of (i) the Contract Rate plus five percent (5%) per annum, or (ii) the maximum amount permitted by applicable law." The "Contract Rate" was defined as "[a] rate of interest equal to twelve percent (12%) per annum until July 1, 2007; as of July 1,

---

[9]We note that section 205/4(1)(c) is limited to business loans, but section 205/4(1)(a) does not contain such limiting language. Compare 815 ILCS 205/4(1)(a) (West 2004) ("Any loan made to a corporation[.]"), with 815 ILCS 205/4(1)(c) (West 2004) ("any business loan to a business association or copartnership").

29

2007, a rate of interest equal to fifteen percent (15%) per annum." Defendants claim that the "maximum amount permitted by applicable law" is an ambiguous term. We cannot agree.

¶ 66    A term is not ambiguous "merely because the parties can suggest creative possibilities for its meaning." *Nicor, Inc. v. Associated Electric & Gas Insurance Services Ltd.*, 223 Ill. 2d 407, 417 (2006). "[W]e will not strain to find an ambiguity where none exists." *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005). In the case at bar, the Interest Act sets the maximum amount of interest permitted by law as 9%, unless an exception exists, in which case "[i]t is lawful to charge, contract for, and receive any rate or amount of interest or compensation." 815 ILCS 205/4(1) (West 2004). Since an exception exists, the lender in the case at bar could charge "any rate or amount of interest or compensation." 815 ILCS 205/4(1) (West 2004). However, the note provides that the default interest rate is capped at the *lesser* of 20% or the maximum amount permitted by law. Since the maximum permitted by law appears to be unlimited, the interest rate set forth in the note is set at 20%. There is no ambiguity to this calculation, and we will not accept defendants' attempt to inject ambiguity into a clear provision easily understood. Accordingly, we affirm the trial court's judgment on the issue of usury.

¶ 67                                   CONCLUSION

¶ 68    For the reasons set forth above, we affirm the trial court's judgment in all respects. The trial court's grant of summary judgment in favor of plaintiff is affirmed, where the five-year survival period for causes of action by or against a dissolved corporation is inapplicable and where the assignment of the note and guaranty did not discharge the guarantors' obligations. The trial court's grant of plaintiff's motion to reconsider is also affirmed where the trial court

properly found that, even if the defense of usury was not waived, it would not be applicable to the instant case because of an exception to the Interest Act.

¶ 69          Affirmed.